Hitchcock, C. J.
There is no little confusion in this case, growing out of the circumstances under which it originated, and the uncertainty of the object which the complainant has in view in the prosecution of the proceeding, and it will be necessary to look to the case, so far as each defendant is concerned, as if it were a case against that defendant alone. Where especially does the necessity exist as to the defendants Harding, Emerick and Young, so far as relief is sought against them ?
It appears, from the bill, answers, exhibits and testimony, that on the 22d July, 1888, Ann Barkaloo made and executed a last will and testament, and died soon thereafter; but the pre *269 cise time of her death does not appear. But at the July term of the court of common pleas, 1838, of Butler county, this will was presented to the court for probate. The will, how ever, was not approved by the court, but the consideration of the question was postponed to the next term; and by consent of all interested, it was ordered by the court, that the personal property and assets of the estate should be delivered into the possession of James Harding, to be by him held subject to the further order of the court.
At the next succeeding term of the court, Harding was'appointed administrator of the estate, and we hear nothing further about the will, until 1844.
At the May term, 1841, of the same court, Harding’s administration account was settled with the court, and a balance found to be in his hands for distribution, amounting to two thousand ninety-eight dollars and eighty-five cents.
On the 31st July, 1839, the defendants Jaques Barkaloo and John Barkaloo, filed a bill in the same court of common pleas against Harding, Jaques Spear, Tunis Spear and Robert Spear. In this bill the complainants alleged that they were the next of kin, being the uncles of the said Ann Barkaloo, and were entitled to her personal estate; that Jaques, Tunis and Robert Spear, also claimed the property, being the cousins of the said Ann Barkaloo, and that Harding refused to pay over the property, until it should first be decided by the court who was entitled thereto.
This bill was answered by the respective defendants, and at the February term, 1840, a final decree was entered, directing the defendant Harding to pay over to the said Jaques and John Barkaloo, whatever amount should remain in his hands upon the final settlement of the estate.
In pursuance of this decree, Harding paid over to Jaques and John Barkaloo, the amount found by the court to be in his hands upon the settlement so as aforesaid made at the May term, 1841.
There is nothing before the court to show that .the will of *270 Ann Barkaloo was ever admitted to probate; but in 1844, three years after the estate had been finally settled as before stated, administration upon her estate, with the will annexed, was granted to the complainant Levi Richmond, and soon thereafter the present bill was filed.
The object of the bill, so far as the defendant Harding is concerned, is to compel him again to account for the property which came into his hands. It is true he is charged in the bill with having wasted the estate. But there is no evidence of waste unless it was waste to pay the debts due from the'estate, and to pay over the balance as he was directed by a court of competent jurisdiction.
It is objected by the complainant, that the copy of the record in the ease of John and Jaques Barkaloo, is not competent evidence in this case, because he'was not a party to that suit. The object of the introduction of that record was to show that Harding had fully accounted for the property which came into his hands, and that he had, after the payment of debts, paid the balance under a decree of a competent tribunal. That such a record was competent evidence for this purpose, was held by the court, in the case of Brown v. Winstanley and Wife, decided at the present term and reported on page 67 of this volume. „ ''
But it is said that this payment is not in accordance with the will, and therefore not available as a defense by Harding. That part of the will referred to, directs as follows : “ After all my debts are paid, all moneys, and all my household goods and movable property, to be divided as follows, to wit: an equal share to go to Thomas P. Barkaloo, son of Jaques Barkaloo; also an equal share to go to Cornelia Barkaloo, daughter of Jaques Barkaloo; also an equal share to go to Mary Ann MeNealy, daughter of Jaques Barkaloo; also an equal share to go to Sarah Barkaloo, daughter of Jaques Barkaloo; also an equal share to go to Nancy Barkaloo, daughter of Jaques Barkaloo; also an equal share to Harriet Barkaloo, daughter of Jaques Barkaloo; .also an equal share to go to John G. Barkaloo, my *271 uncle.” It is true the decree of the court is not in accordance with this will, and there is nothing suprising in this. This will had once been presented for probate, but had been rejected. The case then stood as if there were no will. So far as judicial action could go, this instrument, now claimed to be a will, was void as such, for the want of necessary proof to sustain it. Under such circumstances, the estate must be settled and distributed as an intestate estate. And here it may be proper to remark, that it is a little surprising that this will, which had been rejected by the court of common pleas, should, after the lapse of six years, be resuscitated. How resuscitated we know not. In the meantime, Jaques Barkaloo, father of six of the legatees, and John Barkaloo, himself a legatee, had prosecuted the case in chancery before referred to. Is it possible that these legatees were ignorant of the pendency of that suit ? If not, then why did they not, if they intended to claim under the will, make that claim known ? Why rest until the decree is entered and complied with, and then come forward and attempt to enforce a second payment of the administrator ? It cannot be done. From any thing which appears, the estate was honestly settled by the administrator, and the 'surplus in his hands properly disposed of. Equity does not require any thing fur ther. Law does not require it.
It is attempted to charge Emerick upon the ground that he was a debtor of Ann Barkaloo, and therefore liable to pay to the complainant not only what is now due from him, but also what he has paid to the former administrator, and to his assignees. The case shows that Emerick was indebted to Ann Barkaloo, to whom he had given promissory notes, due at different periods, the last not until 1849. These notes Harding, the administrator, charged himself with as cash, and in performance of the decree against him in favor of Jaques and John Barkaloo, assigned such of said notes as were unpaid to the said Jaques and John.
The amount unpaid by Emerick he states he is willing to pay when it shall fall due, but denies that any in fact is due the *272 estate of Ann Barkaloo, because as he says, the notes have become the property of David Young. Since the institution of this suit, a part or all of the amount due from him has, under an order of court, been paid by him to a receiver, to be appropriated as the court shall direct.
The case of David Young, another defendant, is as follows: As before stated, in pursuance of the decree in favor of Jaques Barkaloo and John Barkaloo, against the defendant Harding, Harding assigned over the Emerick notes to Jaques and John, who received the same as so much money. By the assignment they became the legal owners of these notes. In the spring or summer of 1841, Jaques and John Barkaloo sold, transferred and assigned these notes to the defendant Young, for which he paid them a valuable consideration. The amount paid does not appear in the case, but he insists that it was as much as they were worth. By this transaction Young became the legal owner of the notes and entitled to receive the money thereon. This took place after the decree of 1839, declaring Jaques and John Barkaloo the rightful distributees of the estate of Ann Barkaloo, and three years before this bill was filed.- Probably three years before the will was proved. As to this, however, we do not know, for we are not informed, at what time the will was proved, if proved at all. The object of the bill, so far as Young is concerned, is to compel him to deliver up to the com plainant, such of the notes as have not been paid, and where he has received payment, to compel him to pay over the money
' It seems to the court that this would be manifestly inequitable and unjust. The notes are his by fair and bona fide pur chase, from the rightful owners, and the complainant has no claim either in law or equity upon him.’
From the case so far, it seems that neither of the defendants hitherto named, have anything in their hands belonging to the plaintiff as administrator, or to the legatees named in the will. Shall those legatees, then, be deprived of their right ? This does not follow of necessity. The money, or the property which they claim and which of right belongs to them under the *273 will of Aim Barkaloo, bas passed into the posssession of Jagues and John Barkaloo,-and it has thus passed in virtue of the decision of a competent legal tribunal. Circumstances which have since transpired, show that this was a misdirection of the-property, and it seems to the court that Jaques and John maybe held to account for it.
But, so far as we can see, the only object of this bill is to recover this property for the benefit of these legatees. It does not appear that there are any debts due from the estate of Ann Barkaloo. Those were all settled under the administration of 1888. Such being the facts, it seems to the court that the-legatees should be made parties to the suit, and when that is done, as at present advised, we see no difficulty in rendering a decree which shall do justice between them and their father and uncle.
The bill will be dismissed as to the defendants Harding, Emerick and Young, with costs, and remanded to the county, and continued as to the other defendants, with leave to the complainant to’amend by making new parties.